IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
CHARLESTON

U.S. EQUAL EMPLOYMENT
OPPORTUNITY COMMISSION,

    Plaintiff,

    v.

WRIGHTWAY READY-MIX, LLC;
WRIGHT CONCRETE &
CONSTRUCTION, INC.; and WRIGHT-
MIX MATERIAL SOLUTIONS, LLC,

    Defendants.

Civil Action No. 2:25-cv-00711

Hon. Joseph R. Goodwin

**FIRST AMENDED COMPLAINT
AND JURY TRIAL DEMAND**

## NATURE OF THE ACTION

This is an action under Title I of the Americans with Disabilities Act of 1990, as amended ("ADA"), and Title I of the Civil Rights Act of 1991 to correct unlawful employment practices and to provide appropriate relief to Charging Party John Moore ("Moore") and a class of aggrieved job applicants who were adversely affected by such practices. As alleged with greater particularity below, the U.S. Equal Employment Opportunity Commission ("EEOC" or "the Commission") alleges that Defendants Wrightway Ready-Mix, LLC, Wright Concrete & Construction, Inc., and Wright-Mix Material Solutions, LLC ("Defendants") subjected Moore to denial of hire on the basis of disability, an unlawful qualification standard or other selection criterion that screens out or tends to screen out individuals with a disability or a class of individuals with disabilities, an unlawful preemployment medical inquiry as to whether he is an individual with a disability or as to the nature or severity of such disability, and denial of hire because of information obtained from the unlawful preemployment medical inquiry in violation of the ADA. The Commission further alleges that Defendants subjected a class of job applicants to denial of hire on the basis of disability, an

unlawful qualification standard or other selection criterion that screens out or tends to screen out individuals with a disability or a class of individuals with disabilities, unlawful preemployment medical inquiries as to whether they are individuals with disabilities or as to the nature or severity of such disabilities, and denial of hire because of information obtained from the unlawful preemployment medical inquiries in violation of the ADA.

## JURISDICTION AND VENUE

1.   This Court has jurisdiction over this civil action under 28 U.S.C. §§ 451, 1331, 1337, 1343, and 1345. This action is authorized and instituted pursuant to Section 107(a) of the ADA, 42 U.S.C. § 12117(a), which incorporates by reference Section 706(f)(1) and (3) of Title VII of the Civil Rights Act of 1964 ("Title VII"), as amended, 42 U.S.C. § 2000e-5(f)(1) & (3), and Section 102 of the Civil Rights Act of 1991, 42 U.S.C. § 1981a.

2.   Venue is proper in the U.S. District Court for the Southern District of West Virginia under 42 U.S.C. § 2000e-5(f)(3) and 28 U.S.C. § 1391(b) because the alleged unlawful employment practices were committed in the state of West Virginia (Mingo County) and within this judicial district, as well as other locations.

## PARTIES

3.   Plaintiff U.S. Equal Employment Opportunity Commission is the agency of the United States of America charged with the administration, interpretation, and enforcement of Title I of the ADA and is expressly authorized to bring this action under Section 107(a) of the ADA, 42 U.S.C. § 12117(a), which incorporates by reference Section 706(f)(1) and (3) of Title VII, 42 U.S.C. § 2000e-5(f)(1) & (3).

4.   At all relevant times, Defendant Wrightway Ready-Mix, LLC ("Wrightway Ready-Mix"), a Kentucky limited liability company, has continuously been doing business in the state of

West Virginia (Mingo County), as well as other states, and has continuously employed at least 15 employees.

5.    At all relevant times, Defendant Wright Concrete & Construction, Inc. ("Wright Concrete"), a Kentucky corporation, has continuously been doing business in the state of West Virginia (Mingo County), as well as other states, and has continuously employed at least 15 employees.

6.    At all relevant times, Defendant Wright-Mix Material Solutions, LLC ("Wright-Mix Material Solutions"), a Kentucky limited liability company, has continuously been doing business in the state of West Virginia (Mingo County), as well as other states, and has continuously employed at least 15 employees.

7.    At all relevant times, Wrightway Ready-Mix has continuously been an employer engaged in an industry affecting commerce within the meaning of Section 101(5) of the ADA, 42 U.S.C. § 12111(5), and Section 101(7) of the ADA, 42 U.S.C. § 12111(7), which incorporates by reference Section 701(g) and (h) of Title VII, 42 U.S.C. § 2000e(g) & (h).

8.    At all relevant times, Wright Concrete has continuously been an employer engaged in an industry affecting commerce within the meaning of Section 101(5) of the ADA, 42 U.S.C. § 12111(5), and Section 101(7) of the ADA, 42 U.S.C. § 12111(7), which incorporates by reference Section 701(g) and (h) of Title VII, 42 U.S.C. § 2000e(g) & (h).

9.    At all relevant times, Wright-Mix Material Solutions has continuously been an employer engaged in an industry affecting commerce within the meaning of Section 101(5) of the ADA, 42 U.S.C. § 12111(5), and Section 101(7) of the ADA, 42 U.S.C. § 12111(7), which incorporates by reference Section 701(g) and (h) of Title VII, 42 U.S.C. § 2000e(g) & (h).

3

10.    At all relevant times, Wrightway Ready-Mix has continuously been a covered entity within the meaning of Section 101(2) of the ADA, 42 U.S.C. § 12111(2).

11.    At all relevant times, Wright Concrete has continuously been a covered entity within the meaning of Section 101(2) of the ADA, 42 U.S.C. § 12111(2).

12.    At all relevant times, Wright-Mix Material Solutions has continuously been a covered entity within the meaning of Section 101(2) of the ADA, 42 U.S.C. § 12111(2).

13.    Throughout calendar years 2021 and 2022, Wrightway Ready-Mix continuously employed more than 100 employees.

14.    Throughout calendar years 2021 and 2022, Wright Concrete continuously employed more than 100 employees.

15.    Throughout calendar years 2021 and 2022, Wright-Mix Material Solutions continuously employed more than 100 employees.

16.    Defendants constitute a single "employer" within the meaning of Section 101(5) of the ADA, 42 U.S.C. § 12111(5), and Section 101(7) of the ADA, 42 U.S.C. § 12111(7), which incorporates by reference Section 701(g) and (h) of Title VII, 42 U.S.C. § 2000e(g) & (h). In support of this averment, the Commission states the following:

    a.    At all relevant times, Wrightway Ready-Mix is and has been an affiliate or subsidiary of Wright Concrete, and the companies have represented to the public that Wrightway Ready-Mix is a "division" of Wright Concrete.

    b.    At all relevant times, Wright-Mix Material Solutions is and has been an affiliate or subsidiary of Wright Concrete, and the companies have represented to the public that Wright-Mix Material Solutions is a "division" of Wright Concrete.

4

c.      Wright Concrete created and imposed Wrightway Ready-Mix's policies and practices concerning the ADA.

d.      Wright Concrete created and imposed Wright-Mix Material Solutions' policies and practices concerning the ADA.

e.      Wright Concrete created and imposed Wrightway Ready-Mix's policies and practices concerning employment of workers who use methadone, suboxone, and other medications used as part of medication-assisted treatment for opioid addiction and other substance-use disorders.

f.      Wright Concrete created and imposed Wright-Mix Material Solutions' policies and practices concerning employment of workers who use methadone, suboxone, and other medications used as part of medication-assisted treatment for opioid addiction and other substance-use disorders.

g.      At all relevant times, Defendants have had common management, including Shannon Wright and Kendall Wright.

h.      At all relevant times, Defendants have had interrelated business operations.

i.      At all relevant times, Defendants have publicly held themselves out to third parties as "the Wright family of companies," including in advertising materials such as a common website and a common promotional brochure.

j.      At all relevant times, Defendants have had centralized control of labor relations, including common employment policies and practices and human-resources personnel.

k.      At all relevant times, Wright Concrete has solicited employment applications for Wrightway Ready-Mix.

l.      At all relevant times, Wright Concrete has solicited employment applications for Wright-Mix Material Solutions.

m.      At all relevant times, Defendants have had common ownership, including Shannon Wright and Kendall Wright.

n.      At all relevant times, Defendants have had common financial control.

o.      At all relevant times, Wright-Mix Material Solutions has had the same designated office address that was most recently listed for Wrightway Ready-Mix with the West Virginia Secretary of State, which designated office address is 1238 Holly Ridge Road, Delbarton, West Virginia 25670.

## ADMINISTRATIVE PROCEDURE

17.      More than 30 days prior to the institution of this lawsuit, Charging Party John Moore filed a charge of discrimination with the Commission alleging that Wrightway Ready-Mix had violated the ADA.

18.      The Commission conducted an investigation of Moore's charge of discrimination.

19.      On September 10, 2024, the Commission issued to Defendants an administrative Determination finding reasonable cause to believe that Defendants had violated the ADA with respect to Moore by subjecting him to (a) denial of hire on the basis of disability; (b) an unlawful qualification standard or other selection criterion that screens out or tends to screen out individuals with a disability or a class of individuals with disabilities; (c) an unlawful preemployment medical inquiry as to whether he is an individual with a disability or as to the nature or severity of such disability; and (d) denial of hire because of information obtained from the unlawful preemployment medical inquiry. The Commission's administrative Determination also found reasonable cause to believe that Defendants had violated the ADA with respect to a class of aggrieved job

6

applicants by subjecting them to (a) denial of hire on the basis of disability; (b) an unlawful qualification standard or other selection criterion that screens out or tends to screen out individuals with a disability or a class of individuals with disabilities; (c) unlawful preemployment medical inquiries as to whether they are individuals with disabilities or as to the nature or severity of such disabilities; and (d) denial of hire because of information obtained from the unlawful preemployment medical inquiries. The Commission's administrative Determination also invited Defendants to join with the Commission in informal methods of conciliation to endeavor to eliminate Defendants' discriminatory employment practices and provide appropriate relief. The Commission's administrative Determination specifically stated that the three Defendants and other business entities operated as a single employer and covered entity within the meaning of the ADA and committed the unlawful employment practices that were the subjects of the reasonable-cause findings in the Commission's administrative Determination.

20.     The Commission subsequently engaged in communications with Defendants to provide Defendants an opportunity to remedy the discriminatory practices described in the administrative Determination by informing Defendants of the remedies sought by the Commission.

21.     The Commission was unable to secure from Defendants a conciliation agreement acceptable to the Commission.

22.     On November 1, 2024, the Commission issued to Defendants a Notice of Failure of Conciliation.

23.     All conditions precedent to the institution of this lawsuit have been fulfilled.

**STATEMENT OF CLAIMS**

24.     From on or about February 8, 2022, to the present, Defendants have engaged in unlawful employment practices at their office in Delbarton, West Virginia, in Mingo County, West

Virginia, in violation of Section 102(a), (b)(1), (b)(3)(A), (b)(6), (d)(1), and (d)(2)(A) of the ADA, 42 U.S.C. § 12112(a), (b)(1), (b)(3)(A), (b)(6), (d)(1) & (d)(2)(A).

25.     Moore is a qualified individual with a disability under Sections 3 and 101(8) of the ADA, 42 U.S.C. §§ 12102 & 12111(8). Since at least 2021 and 2022, Moore has had a physical and mental impairment (opioid-use disorder) that substantially limits his major life activities, including but not limited to neurological and brain functions.

26.     Since at least 2021 and 2022, Moore has had a record of opioid-use disorder.

27.     Defendants regarded Moore as having a disability in that Defendants subjected him to adverse employment actions, as described below, because of his non-minor and non-transitory physical and mental impairment.

28.     At all relevant times, Moore was qualified to perform, with or without reasonable accommodation, the essential functions of the job for which he applied at Defendants on or about February 9, 2022.

29.     In 2021 and 2022, Defendants maintained a facility and operations in or around Delbarton, West Virginia, in Mingo County, West Virginia, at or around the following address: 1238 Holly Ridge Road, Delbarton, West Virginia 25670.

30.     In late 2021, Moore learned that Defendants were hiring general laborers.

31.     In late 2021 and January and February 2022, Defendants employed J.C. Johnson ("Johnson") as hiring manager.

32.     In late 2021 and January and February 2022, Moore spoke multiple times via phone with Johnson about employment at Defendants.

8

33.     During one of the phone conversations alleged in Paragraph 32, above, Johnson advised Moore to come to Defendants' facility in Delbarton, West Virginia, to attend a preemployment interview for a position as a general laborer.

34.     During one of the phone conversations alleged in Paragraph 32, above, Johnson advised Moore to bring with him to the preemployment interview any medications that he was taking so that he (Moore) could provide information about those medications when Defendants performed a preemployment drug test.

35.     On or about February 9, 2022, Moore went to Defendants' facility in Delbarton, West Virginia, to apply and interview for employment as a general laborer.

36.     On or about February 9, 2022, Moore and Johnson met inside Johnson's office at Defendants' facility in Delbarton, West Virginia, and Johnson interviewed Moore for prospective employment.

37.     During the meeting alleged in Paragraph 36, above, Johnson asked Moore if he had brought his medications with him, as Johnson had requested. Moore answered that he had done so. Johnson asked Moore what medications he was taking. Moore answered that he was taking methadone, to which Johnson directly replied to the effect that he (Johnson) did not need to see the medication because he could not hire Moore due to company policy in effect since the 1990s.

38.     At all relevant times, Defendants have implemented a policy of categorically refusing to employ any workers who use methadone, suboxone, and other medications used as part of medication-assisted treatment for opioid addiction and other substance-use disorders. This is the policy to which Johnson referred in his interview of Moore on or about February 9, 2022.

9

39.     Moore then asked Johnson to speak with someone higher up, i.e., a superior. In response, Johnson stated to the effect that a female human-resources official who conducted the company's drug screenings would not hire Moore.

40.     In February 2022, Cheryl Tackett ("Tackett") served as head of human resources for Defendants.

41.     On or about February 9, 2022, after the meeting alleged in Paragraph 36, above, Moore met with Tackett in a hallway at Defendants' facility in Delbarton, West Virginia. Upon learning that Moore used methadone, Tackett told Moore to the effect that she could not hire him because of the company policy of refusing to hire workers taking methadone, and when Moore responded by asking to speak with someone higher up, i.e., a superior, Tackett told Moore that she was someone higher up.

42.     Johnson never asked Moore any questions about his (Moore's) prescribed use of methadone as a medical treatment, any side effects of his use of methadone, the medical circum-stances necessitating his use of methadone, or any possible risk that his use of methadone might present to his ability to safely perform the essential functions of a general laborer or any other position at Defendants.

43.     Tackett never asked Moore any questions about his prescribed use of methadone as a medical treatment, any side effects of his use of methadone, the medical circumstances necessi-tating his use of methadone, or any possible risk that his use of methadone might present to his ability to safely perform the essential functions of a general laborer or any other position at De-fendants.

44.     No owner or employee of Wright Concrete, Wrightway Ready-Mix, or Wright-Mix Material Solutions asked Moore any questions about his prescribed use of methadone as a medical

treatment, any side effects of his use of methadone, the medical circumstances necessitating his use of methadone, or any possible risk that his use of methadone might present to his ability to safely perform the essential functions of a general laborer or any other position at Defendants.

45.    Johnson never communicated to Moore a conditional or permanent offer of employment at Defendants.

46.    Tackett never communicated to Moore a conditional or permanent offer of employment at Defendants.

47.    No owner or employee of Wright Concrete, Wrightway Ready-Mix, or Wright-Mix Material Solutions communicated to Moore a conditional or permanent offer of employment at Wright Concrete, Wrightway Ready-Mix, or Wright-Mix Material Solutions.

48.    From on or about February 8, 2022, to the present, Defendants have subjected a class of presently unidentified aggrieved job applicants to unlawful employment practices on the basis of disability, including but not limited to the following conduct:

   a.    Defendants have denied hire to job applicants on the basis of disability, including opioid addiction and other substance-use disorders, the job applicants' records of opioid addiction and other substance-use disorders, and because Defendants regarded the job applicants as having opioid addiction and other substance-use disorders.

   b.    Defendants have refused to employ workers who use methadone, suboxone, and other medications used as part of medication-assisted treatment for opioid addiction and other substance-use disorders.

   c.    Defendants have made inquiries to job applicants, without Defendants having made conditional or permanent offers of employment, about their use of prescription medications.

11

d.      Defendants have denied hire to job applicants because of information obtained from inquiries to the job applicants, without Defendants having made conditional or permanent offers of employment, about their use of prescription medications.

## CAUSES OF ACTION

**Count I: Denial of Hire on the Basis of Disability in Violation of the ADA (John Moore)**

49.     The Commission incorporates by reference all allegations set forth in Paragraphs 1 to 48, above.

50.     Moore is a qualified individual with a disability under Sections 3 and 101(8) of the ADA, 42 U.S.C. §§ 12102 & 12111(8).

51.     On or about February 9, 2022, Moore applied and/or was otherwise considered by Defendants as a candidate for a position of employment at Defendants as a general laborer and/or other position.

52.     Moore was qualified to perform, with or without reasonable accommodation, the essential functions of the job for which he applied at Defendants and/or for which Defendants otherwise considered him a candidate for prospective employment on or about February 9, 2022.

53.     On or about February 9, 2022, Defendants denied hire to Moore on the basis of his disability (opioid-use disorder), his record of such disability, and because Defendants regarded him as having a disability.

54.     The effect of the practices complained of in Paragraphs 49 to 53, above, has been to deprive Moore of equal employment opportunities and otherwise adversely affect his status as a job applicant or other candidate for prospective employment on the basis of disability.

55.     The unlawful employment practices complained of above were intentional.

12

56.     The unlawful employment practices complained of above were done with malice or reckless indifference to Moore's federally protected rights.

**Count II: Unlawful Qualification Standard in Violation of the ADA (John Moore)**

57.     The Commission incorporates by reference all allegations set forth in Paragraphs 1 to 48, above.

58.     Moore is a qualified individual with a disability under Sections 3 and 101(8) of the ADA, 42 U.S.C. §§ 12102 & 12111(8).

59.     From on or about February 8, 2022, to the present, Defendants' implementation of their policy of intentionally refusing to employ workers who use methadone, suboxone, and other medications used as part of medication-assisted treatment for opioid addiction and other substance-use disorders is a qualification standards or other selection criteria that screens out or tends to screen out individuals with disabilities or a class of individuals with disabilities in violation of Section 102(a), (b)(1), (b)(3)(A), and (b)(6) of the ADA, 42 U.S.C. § 12112(a), (b)(1), (b)(3)(A) & (b)(6).

60.     Moore was qualified to perform, with or without reasonable accommodation, the essential functions of the job for which he applied at Defendants and/or for which Defendants otherwise considered him a candidate for prospective employment on or about February 9, 2022.

61.     The effect of the practices complained of in Paragraphs 57 to 60, above, has been to deprive Moore of equal employment opportunities and otherwise adversely affect his status as a job applicant or other candidate for prospective employment on the basis of disability.

62.     The unlawful employment practices complained of above were intentional.

63.     The unlawful employment practices complained of above were done with malice or reckless indifference to Moore's federally protected rights.

**Count III: Unlawful Preemployment Disability-Related Inquiry
in Violation of the ADA (John Moore)**

64. The Commission incorporates by reference all allegations set forth in Paragraphs 1 to 48, above.

65. Defendants' question to Moore on or about February 9, 2022, about his use of methadone as part of medication-assisted treatment for opioid addiction, when Defendants had not made him a conditional or permanent offer of employment, was an inquiry of Moore as to whether he is an individual with a disability or as to the nature or severity of such disability in violation of Section 102(a), (d)(1), and (d)(2)(A) of the ADA, 42 U.S.C. § 12112(a), (d)(1) & (d)(2)(A).

66. Defendants' question to Moore on or about February 9, 2022, about his use of methadone as part of medication-assisted treatment for opioid addiction, when Defendants had not made him a conditional or permanent offer of employment, was likely to elicit—and did, in fact, elicit—from Moore information about a disability.

67. The effect of the practices complained of in Paragraphs 64 to 66, above, has been to deprive Moore of equal employment opportunities and otherwise adversely affect his status as a job applicant or other candidate for prospective employment.

68. The unlawful employment practices complained of above were intentional.

69. The unlawful employment practices complained of above were done with malice or reckless indifference to Moore's federally protected rights.

**Count IV: Denial of Hire Because of Information Obtained from
Unlawful Preemployment Disability-Related Inquiry in Violation of the ADA (John Moore)**

70. The Commission incorporates by reference all allegations set forth in Paragraphs 1 to 48, above.

71. Defendants' question to Moore on or about February 9, 2022, about his use of methadone as part of medication-assisted treatment for opioid addiction, when Defendants had not

made him a conditional or permanent offer of employment, was an inquiry of Moore as to whether he is an individual with a disability or as to the nature or severity of such disability in violation of Section 102(a), (b)(1), (d)(1), and (d)(2)(A) of the ADA, 42 U.S.C. § 12112(a), (b)(1), (d)(1) & (d)(2)(A).

72.     Defendants' question to Moore on or about February 9, 2022, about his use of methadone as part of medication-assisted treatment for opioid addiction, when Defendants had not made him a conditional or permanent offer of employment, was likely to elicit—and did, in fact, elicit—from Moore information about a disability.

73.     Defendants denied hire to Moore because of information that Defendants obtained from the inquiry of Moore as to whether he is an individual with a disability or as to the nature or severity of such disability in violation of Section 102(a), (d)(1), and (d)(2)(A) of the ADA, 42 U.S.C. § 12112(a), (d)(1) & (d)(2)(A).

74.     The effect of the practices complained of in Paragraphs 70 to 73, above, has been to deprive Moore of equal employment opportunities and otherwise adversely affect his status as a job applicant or other candidate for prospective employment.

75.     The unlawful employment practices complained of above were intentional.

76.     The unlawful employment practices complained of above were done with malice or reckless indifference to Moore's federally protected rights.

**Count V: Denial of Hire on the Basis of Disability in Violation of the ADA (Class)**

77.     The Commission incorporates by reference all allegations set forth in Paragraphs 1 to 48, above.

15

78.     At all relevant times, the members of the class of aggrieved job applicants have been qualified individuals with disabilities under Sections 3 and 101(8) of the ADA, 42 U.S.C. §§ 12102 & 12111(8).

79.     From on or about February 8, 2022, to the present, the members of the class of aggrieved job applicants applied or were otherwise considered candidates for positions of employment at Defendants.

80.     From on or about February 8, 2022, to the present, the members of the class of aggrieved job applicants were qualified to perform, with or without reasonable accommodation, the essential functions of the jobs for which they applied at Defendants or for which Defendants otherwise considered them candidates.

81.     From on or about February 8, 2022, to the present, Defendants have denied hire to the members of the class of aggrieved job applicants and other candidates for prospective employment on the basis of their disabilities (opioid addiction and other substance-use disorders), their records of such disabilities, and because Defendants regarded them as having disabilities.

82.     The effect of the practices complained of in Paragraphs 77 to 81, above, has been to deprive a class of presently unidentified aggrieved job applicants and other candidates for prospective employment who use methadone, suboxone, and other medications used as part of medication-assisted treatment for opioid addiction and other substance-use disorders of equal employment opportunities and otherwise adversely affect their status as job applicants or other candidates for prospective employment on the basis of disability.

83.     The unlawful employment practices complained of above were intentional.

84.     The unlawful employment practices complained of above were done with malice or reckless indifference to the federally protected rights of a class of presently unidentified

aggrieved job applicants and other candidates for prospective employment who use methadone, suboxone, and other medications used as part of medication-assisted treatment for opioid addiction and other substance-use disorders.

### Count VI: Unlawful Qualification Standard in Violation of the ADA (Class)

85.     The Commission incorporates by reference all allegations set forth in Paragraphs 1 to 48, above.

86.     The members of the class of aggrieved job applicants are qualified individuals with disabilities under Sections 3 and 101(8) of the ADA, 42 U.S.C. §§ 12102 & 12111(8).

87.     From on or about February 8, 2022, to the present, Defendants' implementation of their policy of intentionally refusing to employ workers who use methadone, suboxone, and other medications used as part of medication-assisted treatment for opioid addiction and other substance-use disorders is a qualification standards or other selection criteria that screens out or tends to screen out individuals with disabilities or a class of individuals with disabilities in violation of Section 102(a), (b)(1), (b)(3)(A), and (b)(6) of the ADA, 42 U.S.C. § 12112(a), (b)(1), (b)(3)(A) & (b)(6).

88.     The members of the class of aggrieved job applicants were qualified to perform, with or without reasonable accommodation, the essential functions of the jobs for which they applied at Defendants and/or for which Defendants otherwise considered them candidates for prospective employment.

89.     The effect of the practices complained of in Paragraphs 85 to 88, above, has been to deprive a class of presently unidentified aggrieved job applicants and other candidates for prospective employment of equal employment opportunities and otherwise adversely affect their status as employees on the basis of disability.

90.     The unlawful employment practices complained of above were intentional.

91.     The unlawful employment practices complained of above were done with malice or reckless indifference to the federally protected rights of a class of presently unidentified aggrieved job applicants and other candidates for prospective employment who use methadone, suboxone, and other medications used as part of medication-assisted treatment for opioid addiction and other substance-use disorders.

**Count VII: Unlawful Preemployment Disability-Related Inquiries
in Violation of the ADA (Class)**

92.     The Commission incorporates by reference all allegations set forth in Paragraphs 1 to 48, above.

93.     From on or about February 8, 2022, to the present, Defendants have made inquiries to the members of the class of aggrieved job applicants, when Defendants had not made them conditional or permanent offers of employment, as to whether the class members are individuals with disabilities or as to the nature or severity of such disabilities in violation of Section 102(a), (d)(1), and (d)(2)(A) of the ADA, 42 U.S.C. § 12112(a), (d)(1) & (d)(2)(A).

94.     From on or about February 8, 2022, to the present, Defendants' inquiries to the members of the class of aggrieved job applicants, when Defendants had not made them conditional or permanent offers of employment, were likely to elicit—and did, in fact, elicit—from the class members information about disabilities.

95.     The effect of the practices complained of in Paragraphs 92 to 94, above, has been to deprive a class of presently unidentified aggrieved job applicants and other candidates for prospective employment of equal employment opportunities and otherwise adversely affect their status as job applicants or other candidates for prospective employment.

96.     The unlawful employment practices complained of above were intentional.

97.    The unlawful employment practices complained of above were done with malice or reckless indifference to the federally protected rights of a class of presently unidentified aggrieved job applicants and other candidates for prospective employment who were subjected to those practices.

**Count VIII: Denial of Hire Because of Information Obtained from
Unlawful Preemployment Disability-Related Inquiries in Violation of the ADA (Class)**

98.    The Commission incorporates by reference all allegations set forth in Paragraphs 1 to 48, above.

99.    From on or about February 8, 2022, to the present, Defendants have made inquiries to the members of the class of aggrieved job applicants, when Defendants had not made them conditional or permanent offers of employment, as to whether the class members are individuals with disabilities or as to the nature or severity of such disabilities in violation of Section 102(a), (b)(1), (d)(1), and (d)(2)(A) of the ADA, 42 U.S.C. § 12112(a), (b)(1), (d)(1) & (d)(2)(A).

100.    From on or about February 8, 2022, to the present, Defendants' inquiries to the members of the class of aggrieved job applicants, when Defendants had not made them conditional or permanent offers of employment, were likely to elicit—and did, in fact, elicit—from the class members information about disabilities.

101.    From on or about February 8, 2022, to the present, Defendants denied hire to the members of the class of aggrieved job applicants because of information that Defendants obtained from the inquires of the class members as to whether the class members are individuals with disabilities or as to the nature or severity of such disabilities in violation of Section 102(a), (d)(1), and (d)(2)(A) of the ADA, 42 U.S.C. § 12112(a), (d)(1) & (d)(2)(A).

102.    The effect of the practices complained of in Paragraphs 98 to 101, above, has been to deprive a class of presently unidentified aggrieved job applicants and other candidates for

prospective employment of equal employment opportunities and otherwise adversely affect their status as job applicants or other candidates for prospective employment.

103.   The unlawful employment practices complained of above were intentional.

104.   The unlawful employment practices complained of above were done with malice or reckless indifference to the federally protected rights of a class of presently unidentified aggrieved job applicants and other candidates for prospective employment who were subjected to those practices.

**PRAYER FOR RELIEF**

Wherefore, the Commission respectfully requests that this Court:

A.   Grant a permanent injunction enjoining and restraining Defendants, their officers, successors, assigns, and all persons in active concert or participation with them from engaging in discrimination on the basis of disability, including denying hire to job applicants on the basis of actual disability, record of disability, or perceived disability; maintaining qualification standards or other selection criteria that screen out or tend to screen out individuals with disabilities or a class of individuals with disabilities; subjecting job applicants to inquiries, when Defendants have not made them conditional or permanent offers of employment, as to whether the job applicants are individuals with disabilities or as to the nature or severity of such disabilities; and denying hire to job applicants because of information that Defendants obtained from inquiries, when Defendants have not made them conditional or permanent offers of employment, as to whether the job applicants are individuals with disabilities or as to the nature or severity of such disabilities.

B.   Order Defendants to institute and carry out policies, practices, and programs that provide equal employment opportunities for job applicants with and without disabilities, and which eradicate the effects of their past and present unlawful employment practices.

C.      Order Defendants to make whole Charging Party John Moore and a class of presently unidentified aggrieved job applicants and other candidates for prospective employment by providing appropriate back pay with prejudgment interest, in amounts to be determined at trial, and other affirmative relief necessary to eradicate the effects of their unlawful suspension, including but not limited to instatement with retroactive seniority and benefits or front pay in lieu thereof.

D.      Order Defendants to make whole Charging Party John Moore and a class of presently unidentified aggrieved job applicants and other candidates for prospective employment by providing compensation for past and future pecuniary losses resulting from the unlawful employment practices described in Paragraphs 24 to 104, above, in amounts to be determined at trial.

E.      Order Defendant to make whole Charging Party John Moore and a class of presently unidentified aggrieved job applicants and other candidates for prospective employment by providing compensation for past and future non-pecuniary losses resulting from the unlawful practices complained of in Paragraphs 24 to 104, above, including emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other non-pecuniary losses, in amounts to be determined at trial.

F.      Order Defendant to pay Charging Party John Moore and a class of presently unidentified aggrieved job applicants and other candidates for prospective employment punitive damages for the malicious and reckless conduct described in Paragraphs 24 to 104, above, in amounts to be determined at trial.

G.      Grant such further relief as the Court deems necessary and proper in the public interest.

H.      Award the Commission its costs of this action.

## JURY TRIAL DEMAND

The Commission demands a jury trial on all questions of fact raised by its First Amended Complaint.

Respectfully submitted,

U.S. EQUAL EMPLOYMENT
OPPORTUNITY COMMISSION

CATHERINE L. ESCHBACH
ACTING GENERAL COUNSEL
WASHINGTON, D.C.

CHRISTOPHER LAGE
DEPUTY GENERAL COUNSEL
WASHINGTON, D.C.

GWENDOLYN YOUNG REAMS
ASSOCIATE GENERAL COUNSEL
WASHINGTON, D.C.

*Debra M. Lawrence* by RLP per written authorization
DEBRA M. LAWRENCE
REGIONAL ATTORNEY
EEOC – PHILADELPHIA DISTRICT OFFICE

RONALD L. PHILLIPS
ASSISTANT REGIONAL ATTORNEY
OH Bar No. 0070263
EEOC – Baltimore Field Office
George H. Fallon Federal Building
31 Hopkins Plaza, Suite 1432
Baltimore, MD 21201
Phone: (410) 801-6714
Fax: (443) 992-7880
Email: ronald.phillips@eeoc.gov

22

GREGORY A. MURRAY
SENIOR TRIAL ATTORNEY
PA Bar No. 316144
EEOC – Pittsburgh Area Office
William S. Moorhead Federal Building
1000 Liberty Avenue, Suite 1112
Pittsburgh, PA 15222
Phone: (412) 588-6907
Fax: (412) 395-5749
Email: gregory.murray@eeoc.gov

*Counsel for U.S. Equal Employment
Opportunity Commission*

MOORE CAPITO
UNITED STATES ATTORNEY

BY: /s/ Jason S. Bailey
JASON S. BAILEY
ASSISTANT UNITED STATES ATTORNEY
WV State Bar No. 13582
United States Attorney's Office
300 Virginia Street East, Suite 4000
Charleston, WV 25301
(304) 345-2200
(304) 347-5443 (facsimile)
jason.bailey2@usdoj.gov

*Counsel for United States of America*

23