**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA**

**CHARLESTON DIVISION**

U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION,

        Plaintiff,

v.                                     CIVIL ACTION NO.  2:25-cv-711

WRIGHTWAY READY-MIX, LLC, et al.,

        Defendants.

**MEMORANDUM OPINION AND ORDER**

Pending are Defendants Wright Concrete & Construction, Inc. ("Wright Concrete") and Wright-Mix Materials Solutions, LLC's ("Wright-Mix") (together the "Mix/Concrete Defendants") Motions to Dismiss First Amended Complaint, [ECF Nos. 41, 43]. Plaintiff United States Equal Employment Opportunity Commission ("the EEOC" or "the Commission") responded in opposition to Wright-Mix's motion to dismiss, [ECF No. 45], to which Wright-Mix replied, [ECF No. 54]. The EEOC thereafter moved to strike Wright-Mix's Reply in Support of Its Motion to Dismiss as untimely. [ECF No. 57]. The EEOC further responded in opposition to Wright Concrete's motion to dismiss, [ECF No. 53], to which Wright Concrete replied, [ECF No. 59].

Also pending are Defendants Wrightway Ready-Mix, LLC ("Wrightway"), Wright Concrete, and Wright-Mix's Motions to Stay Discovery. [ECF Nos. 46, 48, 50]. The EEOC filed a consolidated response in opposition to Defendants' motions to stay, [ECF No. 58], to which each Defendant filed a separate reply, [ECF Nos. 62, 63, 64]. Defendants further moved to strike

Plaintiff's responses at ECF Nos. 45, 53, and 58 for exceeding the page limitation prescribed by the Local Rules. [ECF No. 60]. The matters are ripe for adjudication.

## I.    BACKGROUND

On December 2, 2025, the EEOC instituted this action against Defendants Wrightway and Wright Concrete, alleging violations of the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12101 *et seq. See* [ECF No. 1]. On January 29, 2026, Wrightway and Wright Concrete filed their Answer, asserting that Charging Party John Moore neither interviewed with nor applied for employment at either entity, but instead applied to Wright-Mix, which they described as another "division." [ECF No. 8 ¶¶ 4, 41–42]. In light of that representation, the EEOC filed its First Amended Complaint as a matter of course pursuant to Federal Rule of Civil Procedure 15(a)(1)(B) on February 17, 2026, adding Wright-Mix as a defendant. [ECF No. 13].

The EEOC alleges that the three Defendants operated as a "single employer" during the relevant period. *Id.* ¶¶ 16, 19. Specifically, the EEOC alleges that Wrightway and Wright-Mix were affiliates or subsidiaries of Wright Concrete; that the entities shared common ownership, management, financial control, and labor relations; that Wright Concrete established employment and ADA-related policies for the affiliated entities; and that Defendants publicly held themselves out as "the Wright family of companies." *Id.* ¶ 16.

The EEOC's claims arise from an administrative charge filed by Mr. Moore alleging disability discrimination. *Id.* ¶ 17. Following its investigation, the EEOC issued an administrative Determination on September 10, 2024, finding reasonable cause to believe Defendants violated the ADA by denying Mr. Moore employment because of his disability, maintaining an unlawful qualification standard, making unlawful preemployment disability-related inquiries, and denying employment based on information obtained through those inquiries. *Id.* ¶ 19. The EEOC also found

reasonable cause to believe Defendants engaged in similar unlawful practices against a class of aggrieved job applicants. *Id.* The EEOC's "Determination also invited Defendants to join with the Commission in informal methods of conciliation to endeavor to eliminate Defendants' discriminatory employment practices and provide appropriate relief." *Id.* The Determination "specifically stated that the three Defendants and other business entities operated as a single employer and covered entity within the meaning of the ADA and committed the unlawful employment practices that were the subjects of the reasonable-cause findings in the Commission's administrative Determination." *Id.* After unsuccessful conciliation efforts, the EEOC issued a "Notice of Failure of Conciliation" on November 1, 2024, and alleges that all conditions precedent to suit have been satisfied. *Id.* ¶¶ 20–23.

According to the First Amended Complaint, Defendants maintained a facility in Delbarton, West Virginia, where they hired general laborers. *Id.* ¶¶ 29–30. In late 2021, Mr. Moore learned that Defendants were hiring for general laborer positions. *Id.* ¶ 30. Mr. Moore is a qualified individual with a disability under the ADA. *Id.* ¶ 25. "Since at least 2021 and 2022, [Mr.] Moore has had a physical and mental impairment (opioid-use disorder) that substantially limits his major life activities, including but not limited to neurological and brain functions." *Id.*

During late 2021 and early 2022, Mr. Moore spoke several times by telephone with J.C. Johnson, Defendants' hiring manager, regarding employment opportunities. *Id.* ¶¶ 31–33. Mr. Johnson instructed Mr. Moore to attend a pre-employment interview at Defendants' facility in Delbarton, and to bring any prescription medications he was taking so that he could provide information about them during the pre-employment drug-testing process. *Id.* ¶ 33–34.

Mr. Moore appeared for an interview on February 9, 2022. *Id.* ¶¶ 35–36. During the interview, Mr. Johnson asked whether Mr. Moore had brought his medications and what

medications he was taking. *Id.* ¶ 37. After Mr. Moore disclosed that he took methadone, Mr. Johnson allegedly responded that he did not need to see the medication because company policy prohibited hiring individuals who used methadone. *Id.* The EEOC alleges that, at all relevant times, Defendants maintained a policy categorically refusing to employ individuals who used methadone, suboxone, or other medications prescribed as part of medication-assisted treatment for opioid-use disorder or other substance-use disorders. *Id.* ¶ 38.

Mr. Moore requested to speak with someone higher in the organization. *Id.* ¶ 39. Mr. Johnson allegedly informed him that the human resources official responsible for drug screenings would likewise refuse to hire him. *Id.* At the time, Cheryl Tackett served as Defendants' head of human resources. *Id.* ¶ 40. Mr. Moore subsequently spoke with Ms. Tackett, who allegedly told him that he could not be hired because of the company's policy regarding methadone use and identified herself as the appropriate decisionmaker when Mr. Moore again requested to speak with a superior. *Id.* ¶ 41.

The EEOC further alleges that neither Mr. Johnson, Ms. Tackett, nor any other owner or employee of the Defendant entities asked Mr. Moore any questions concerning his prescribed methadone treatment, its side effects, the medical condition for which it had been prescribed, or whether his use of methadone affected his ability to safely perform the essential functions of the position. *Id.* ¶¶ 42–44. Mr. Moore was never extended either a conditional or permanent offer of employment. *Id.* ¶¶ 45–47.

Beyond Mr. Moore's individual allegations, the EEOC alleges that, from February 8, 2022, to the present, Defendants have subjected a class of presently unidentified job applicants to the same practices by denying employment to applicants with opioid-use disorder and other substance-use disorders, refusing to hire individuals using medication-assisted treatment, making pre-offer

4

inquiries regarding prescription medications, and denying employment based on information obtained through those inquiries. *Id.* ¶¶ 48(a)–(d).

Based on these allegations, the EEOC asserts eight causes of action under the ADA: (1) denial of hire on the basis of disability as to Mr. Moore; (2) use of an unlawful qualification standard as to Mr. Moore; (3) unlawful pre-employment disability-related inquiry as to Mr. Moore; (4) denial of hire based on information obtained from an unlawful pre-employment disability-related inquiry as to Mr. Moore; (5) denial of hire on the basis of disability as to the putative class; (6) use of an unlawful qualification standard as to the class of aggrieved job applicants; (7) unlawful preemployment disability-related inquiries as to the class of aggrieved job applicants; and (8) denial of hire based on information obtained from unlawful pre-employment disability-related inquiries as to the class of aggrieved job applicants. *Id.* ¶¶ 49–104. The EEOC seeks injunctive relief prohibiting further disability discrimination, implementation of nondiscriminatory employment policies, and monetary and equitable relief for Mr. Moore and the affected class, including back pay, instatement or front pay, compensatory damages, punitive damages, costs, and such other relief as the court deems appropriate. *Id.* at 20–21.

The Mix/Concrete Defendants now move to dismiss the EEOC's First Amended Complaint pursuant to Federal Rules of Civil Procedure 12(b)(1), 12(b)(6), and 12(c), arguing that the EEOC failed to exhaust administrative remedies prior to filing suit, thereby depriving this court of subject-matter jurisdiction. [ECF Nos. 41, 43]. All three Defendants also move to stay discovery pending resolution of the motions to dismiss. [ECF Nos. 46, 48, 50].

## II.    LEGAL STANDARD

A motion to dismiss filed under Rule 12(b)(6) tests the legal sufficiency of a complaint. *Giarratano v. Johnson*, 521 F.3d 298, 302 (4th Cir. 2008). In resolving a motion to dismiss under

5

Rule 12, the court may not consider "matters outside the pleadings," Fed. R. Civ. P. 12(d). Specifically, the court considers only those "documents attached or incorporated into the complaint." *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 448 (4th Cir. 2011); *see also* Fed. R. Civ. P. 10(c); *Goines v. Valley Cmty. Servs. Bd.*, 822 F.3d 159, 166 (4th Cir. 2016). A court may also consider a document submitted by a moving party if it is "integral to the complaint and there is no dispute about the document's authenticity." *Goines*, 822 F.3d at 166.

Generally, a pleading under the Federal Rules of Civil Procedure requires only "a short and plain statement of the claim showing that the pleader is entitled to relief[.]" Fed. R. Civ. P. 8(a)(2). "When ruling on a motion to dismiss, courts must accept as true all of the factual allegations contained in the complaint and draw all reasonable inferences in favor of the plaintiff." *Farnsworth v. Loved Ones in Home Care, LLC*, No. 2:18-CV-01334, 2019 WL 956806, at *1 (S.D. W. Va. Feb. 27, 2019) (citing *E.I. du Pont de Nemours & Co.*, 637 F.3d at 440). These factual allegations, taken as true, must "state a claim to relief that is plausible on its face." *Robertson v. Sea Pines Real Est. Cos.*, 679 F.3d 278, 288 (4th Cir. 2012) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). The plausibility standard is not a probability requirement, but "asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)). Although "the complaint must contain sufficient facts to state a claim that is plausible on its face, it nevertheless need only give the defendant fair notice of what the claim is and the grounds on which it rests." *Hall v. DIRECTV, LLC*, 846 F.3d 757, 765 (4th Cir. 2017). Thus, "a complaint is to be construed liberally so as to do substantial justice." *Id.*

A motion for judgment on the pleadings under Rule 12(c) is evaluated under the same standard applicable to a motion to dismiss under Rule 12(b)(6). *Occupy Columbia v. Haley*, 738 F.3d 107, 115 (4th Cir. 2013); *Conner v. Cleveland Cnty.*, 22 F.4th 412, 419-20 (4th Cir. 2022).

To defeat a Rule 12(c) motion, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Conner*, 22 F.4th at 420. The court views "the facts presented in the pleadings and the inferences to be drawn therefrom in the light most favorable to the nonmoving party." *Id.* Judgment on the pleadings is appropriate only when "it appears certain that the plaintiff cannot prove any set of facts in support of his claim entitling him to relief." *Ctr. for Excellence in Higher Educ., Inc. v. Accreditation All. of Career Schs. & Colls.*, 166 F.4th 452, 457 (4th Cir. 2026) (quoting *Edwards v. City of Goldsboro*, 178 F.3d 231, 244 (4th Cir. 1999)).

## III.   DISCUSSION

### A.  Motions to Strike

The EEOC moves to strike Wright-Mix's Reply in Support of Its Motion to Dismiss as untimely. [ECF No. 57]. Local Rule of Civil Procedure 7.1(a)(7) provides that "reply memoranda shall be filed and served on opposing counsel and unrepresented parties within 7 days from the date of service of the memorandum in response to the motion." Wright-Mix's counsel was served electronically on May 14, 2026, and thus any reply to EEOC's memorandum in response was due May 21, 2026. Wright-Mix did not file its reply until May 26, 2026. [ECF No. 54].

"This district routinely grants motions to strike untimely [briefing] when the late filer did not seek leave of the Court prior to filing the response and did not assert any statement of good cause, excusable neglect, or other explanation to support the untimely submission." *Ward v. Am. Life Ins. Co.*, No. 2:22-cv-00397, 2022 WL 17825698, at *1 (S.D. W. Va. Dec. 20, 2022) (citation modified); *see also Watson v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa.*, No. 5:13-cv-01939, 2013 WL 2000267, at *2 (S.D. W. Va. May 13, 2013); *see also In re Ethicon, Inc. Pelvic Repair Sys. Prods. Liab. Litig.*, No. 2:13-cv-19979, 2018 WL 279992, at *2 (S.D. W. Va. Jan. 3, 2018);

*Pearson v. Prichard's Excavating & Mobile Home Transp.*, No. 3:13-cv-19629, 2014 WL 534221, at *1 n.5 (S.D. W. Va. Feb. 10, 2014).

In response to EEOC's motion to strike, Wright-Mix does not dispute that its reply was untimely, nor did Wright-Mix seek leave of court before filing its reply or attempt to establish excusable neglect. *See* Fed. R. Civ. P. 6(b)(1)(B). Indeed, Wright-Mix expressly requests that the court grant the EEOC's motion to strike. [ECF No. 68, at 2 ("Wright-Mix . . . respectfully requests this Court to strictly enforce its Local Rule 7.1 (a) as to page limitations and the time for filing briefs as requested by the Plaintiff EEOC and grant ECF 60 Defendants' Motion to Strike and ECF 57 Motion to Strike.")]. Because Wright-Mix filed its reply outside the period prescribed by Local Rule 7.1(a)(7), failed to seek leave of court, and offered no explanation for its untimeliness, the EEOC's Motion to Strike, [**ECF No. 57**], is **GRANTED**. The court **ORDERS** that Defendant Wright-Mix's Reply in Support of Its Motion to Dismiss, [**ECF No 54**], be **STRICKEN** from the record. I will not consider the untimely reply in ruling on the pending Motion to Dismiss.

Defendants, in turn, move to strike EEOC's responses at ECF Nos. 45, 53, and 58 on the ground that each exceeds the twenty-page limitation set forth in Local Rule 7.1(a)(2). [ECF No. 60]. I decline to do so.

Each challenged filing consists of twenty pages of substantive content followed by a twenty-first page containing only counsel's signature block. No argument, citation to authority, factual allegation, or evidentiary material appears on page twenty-one. Thus, the filings exceed the page limitation, if at all, only in form and not in substance.

Local Rule 7.1(a)(2) establishes default page limitations for briefing but does not require the court to strike every filing that marginally exceeds those limits. *See Simmons v. City of Hurricane*, No. 3:25-cv-0345, 2026 WL 711387, at *1 (S.D. W. Va. Mar. 13, 2026). Rather,

8

"[d]istrict courts retain broad discretion to manage briefing and to determine the appropriate remedy for noncompliance with local rules." *Id.*; *see also Westfield Ins. Co. v. Mitchell*, No. 2:12-cv-0585, 2013 WL 4742832, at *3 (S.D. W. Va. Sept. 3, 2013) (noting that district court "ha[s] discretion to nonetheless review the substance of the [noncompliant] motion in the interests of justice"). Indeed, "striking a brief is a severe sanction and is generally disfavored where lesser measures are available and where the [c]ourt is capable of disregarding any improper or immaterial material without removing the filing from the record." *Simmons*, 2026 WL 711387, at *2 (citing *United States v. Shaffer Equip Co.*, 11 F.3d 450, 462 (4th Cir. 1993)).

I find the inclusion of counsel's signature block on a separate page to be a de minimis deviation that does not undermine the purpose of Local Rule 7.1(a)(2). *See* Fed. R. Civ. P. 83(a)(2). Defendants identify no prejudice resulting from the additional page, and the court is unaware of any. The challenged filings contain no substantive material beyond page twenty, and the purposes of the underlying page limitations—namely, the efficient presentation and adjudication of arguments—are not implicated by the inclusion of a signature block on a separate page.  Under these circumstances, striking the EEOC's responses would be disproportionate.

Accordingly, Defendants' Motion to Strike, [**ECF No. 60**], is **DENIED**. Counsel is cautioned to comply strictly with all page limitations and formatting requirements set forth in the Local Rules in future filings.

### B.  Motions to Dismiss

The arguments set forth in Wright-Mix's and Wright Concrete's motions to dismiss are, in all material respects, substantially the same. The Mix/Concrete Defendants contend that the EEOC failed to exhaust administrative remedies prior to filing suit and that this alleged failure deprives the court of subject-matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1), warrants

dismissal for failure to state a claim under Rule 12(b)(6), and alternatively justifies judgment on the pleadings under Rule 12(c). [ECF No. 42 at 1–5; ECF No. 44 at 1–5].

### 1. Exhaustion of Administrative Remedies

The bulk of the Mix/Concrete Defendants' arguments rest on a fundamentally flawed legal premise—namely, that the EEOC must exhaust administrative remedies before bringing a public enforcement action under the ADA. [ECF No. 42 at 5; ECF No. 44 at 6]. That framing misapprehends both the nature of the EEOC's enforcement authority and the procedural posture in which exhaustion defenses are properly raised.

As a threshold matter, the Mix/Concrete Defendants' invocation of Federal Rule of Civil Procedure 12(b)(1) is misplaced. A motion under Rule 12(b)(1) challenges the court's subject-matter jurisdiction over the action. Fed. R. Civ. P. 12(b)(1). It is true that, "[p]rior to pursuing a [Title VII of the Civil Rights Act of 1964 ("Title VII")] claim in federal court, a plaintiff must exhaust her administrative remedies by filing a charge of discrimination with the EEOC." *Hentosh v. Old Dominion Univ.*, 767 F.3d 413, 416 (4th Cir. 2014); *see also* 42 U.S.C. §§ 2000e-5(b), (e)(1), (f)(1). But the Supreme Court has made clear that this charge-filing requirement is not jurisdictional and does not circumscribe the federal courts' adjudicatory authority. *Fort Bend Cnty. v. Davis*, 587 U.S. 541, 550 (2019) (emphasizing that the provisions establishing the charge-filing requirement do "not speak to a court's authority," nor do they "refer in any way to the jurisdiction of the district courts"). Rather, federal courts exercise jurisdiction over Title VII actions pursuant to 28 U.S.C. § 1331's grant of general federal-question jurisdiction and Title VII's jurisdictional provision. *Id.* at 550–51. Accordingly, the exhaustion requirement operates not as a limitation on jurisdiction, but as a mandatory claim-processing rule, "that must be enforced when properly raised." *Walton v. Harker*, 33 F.4th 165, 175 (4th Cir. 2022) (citing *Fort Bend Cnty.*, 587 U.S. at

10

550); *Hollis v. Morgan State Univ.*, 153 F.4th 369, 379 n.5 (4th Cir. 2025); *LaFauci v. Boone Cnty. Bd. of Educ.*, No. 2:25-cv-0081, 2026 WL 763309, at *5 n.1 (S.D. W. Va. Mar. 18, 2026) (Johnston, J.) (stating that Title VII exhaustion requirement "is not jurisdictional but rather a claim-processing rule").

Although *Fort Bend County* arose in the Title VII context, its reasoning applies with equal force to claims under the ADA, which incorporates Title VII's administrative enforcement procedures. *Cowgill v. First Data Techs., Inc.*, No. ADC-19-2565, 2020 WL 551913, at *3 (D. Md. Feb. 4, 2020) ("Though the Supreme Court in [*Fort Bend Cnty.*] was addressing a Title VII Charge, plaintiffs must follow identical EEOC procedures when bringing a Charge of Discrimination under both Title VII and the ADA."); 42 U.S.C. § 12117(a); *see also EEOC v. Waffle House, Inc.*, 534 U.S. 279, 285 (2002) ("Congress has directed the EEOC to exercise the same enforcement powers, remedies, and procedures that are set forth in Title VII . . . when it is enforcing the ADA's prohibitions against employment discrimination on the basis of disability."); *EEOC v. Fed. Express Corp.*, 513 F.3d 360, 371 (4th Cir. 2008). The Mix/Concrete Defendants cite no authority suggesting that the ADA's exhaustion requirement remains jurisdictional after *Fort Bend County*, and I am aware of none. Accordingly, because the ADA's exhaustion requirement is a mandatory claim-processing rule rather than a jurisdictional prescription, exhaustion provides no basis for dismissal under Rule 12(b)(1). To the extent the Mix/Concrete Defendants move to dismiss for lack of subject-matter jurisdiction, their motions are **DENIED**.

The argument fares no better under Rules 12(b)(6) and 12(c). Although the ADA generally requires private plaintiffs to exhaust administrative remedies before filing suit, that requirement does not apply in the same manner to EEOC public enforcement actions. To the contrary, as the Court of Appeals for the Seventh Circuit has explained:

> The difference between the two classes of case is that exhaustion of administrative remedies is an issue when the suit is brought by a private party but not when the Commission is the plaintiff. Were the private party permitted to add claims that had not been presented in the administrative charge filed with the EEOC, the Commission's informal procedures for resolving discrimination charges . . . would be by-passed, in derogation of the statutory scheme. That is not an issue when the EEOC itself is the plaintiff, which is why a suit by the EEOC is not confined "to claims typified by those of the charging party," and why [defendant] is mistaken to think that the EEOC's complaint must be closely related to the charge that kicked off the Commission's investigation. "Any violations that the EEOC ascertains in the course of a reasonable investigation of the charging party's complaint are actionable." The charge incites the investigation, but if the investigation turns up additional violations the Commission can add them to its suit.

*EEOC v. Caterpillar, Inc.*, 409 F.3d 831, 832–33 (7th Cir. 2005) (internal citations omitted); *see also EEOC v. Route 22 Sports Bar, Inc.*, No. 5:21-cv-0007, 2021 WL 2557087, at *10–11 (N.D. W. Va. June 22, 2021) (Bailey, J.) (distinguishing between EEOC enforcement actions and private Title VII litigation and noting that exhaustion is not a prerequisite to EEOC suits); *EEOC v. Scott Med. Health Ctr., P.C.*, 217 F. Supp. 3d 834, 837–38, 837 (W.D. Pa. 2016) (rejecting the argument that Title VII "imposes identical procedural requirements on the EEOC suing in its own name as the statute imposes on private plaintiffs" (citing, *inter alia*, *EEOC v. Gen. Elec. Co.*, 532 F.2d 359 (4th Cir. 1976))).

Rather, the EEOC's authority is defined by the "reasonable investigation" standard. *See Gen. Elec. Co.*, 532 F.2d at 364–66 ("[T]he original charge is sufficient to support action by the EEOC . . . for any discrimination stated in the charge itself or developed in the course of a reasonable investigation of that charge, provided such discrimination was included in the reasonable cause determination of the EEOC and was followed by compliance with the conciliation procedures . . . ."); *see also EEOC v. Am. Nat'l Bank,* 652 F.2d 1176, 1185–86 (4th Cir. 1981) (holding that the expansion of the complaint against an employer to encompass its practices at its multiple locations was proper because the employer was given adequate notice of

12

the practices under investigation and ample opportunity for conciliation); *EEOC v. Kronos*, 620 F.3d 287, 297 (3d Cir. 2010) ("Once the EEOC begins an investigation, it is not required to ignore facts that support additional claims of discrimination if it uncovers such evidence during the course of a reasonable investigation of the charge."); *Gen. Tel. Co. of the N.W., Inc. v. EEOC*, 446 U.S. 318, 331 (1980) ("Any violations that the EEOC ascertains in the course of a reasonable investigation of the charging party's complaint are actionable.").

To be sure, had Mr. Moore, the Charging Party, filed suit in his own name, he would be required to exhaust administrative remedies before pursuing an ADA claim in federal court. That, however, is not this case.[1] Mr. Moore is not a plaintiff here, and his hypothetical obligations have no bearing on the EEOC's independent enforcement authority or on the disposition of the present motions. Accordingly, I find that the Mix/Concrete Defendants' exhaustion arguments do not provide a basis for dismissal.

## 2. Satisfaction of Conditions Precedent

Although the EEOC is not required to exhaust administrative remedies in the manner of a private litigant, it must nevertheless satisfy the statutory conditions precedent to suit before instituting an enforcement action under the ADA. I find the EEOC has adequately alleged satisfaction of those conditions here.

Title VII establishes "an integrated, multistep enforcement procedure culminating in the EEOC's authority to bring a civil action in a federal court." *Occidental Life Ins. Co. of California*

---

[1] To that end, the Mix/Concrete Defendants repeatedly refer to Mr. Moore as "Plaintiff Moore," treating both the EEOC and the Charging Party as plaintiffs in this action. *See* [ECF Nos. 42, 44]. That is not the case. This action is brought solely by the EEOC. *See EEOC v. Waffle House, Inc.*, 534 U.S. 279, 297 (2002) (stating that EEOC's authority is not derivative of an employee's claim and that EEOC sues in the public's interest even when it seeks recovery of victim-specific remedies, and holding that arbitration agreement between employer and employee is not binding on EEOC); *see also Gen. Tel. Co. of the N.W., Inc.*, 446 U.S. at 326 ("[T]he EEOC is not merely a proxy for the victims of discrimination . . . .").

*v. EEOC*, 432 U.S. 355, 359 (1977). The ADA expressly incorporates the same enforcement framework. 42 U.S.C. § 12117(a).  Accordingly, after receiving a timely charge of discrimination and before filing suit, the EEOC must: (1) provide notice of the charge to the employer; (2) investigate the charge; (3) determine that reasonable cause exists to believe that the employer committed an unlawful employment practice; and (4) endeavor to eliminate the alleged unlawful practice through conference, conciliation, and persuasion. *See EEOC v. Raymond Metal Prods. Co.*, 530 F.2d 590, 592 (4th Cir. 1976) ("Title VII requires the commission to complete a four-step procedure before commencing judicial action. These steps are service of a notice of the charge, investigation, determination of whether there is reasonable cause to believe the charge is true, and endeavors to eliminate the alleged unlawful practice through conference, conciliation, and persuasion. The commission can institute suit only if it has been unable to secure an acceptable conciliation agreement."); *see also Mach Mining, LLC v. EEOC*, 575 U.S. 480, 483–84 (2015); *Route 22 Sports Bar*, 2021 WL 2557087, at *3 (stating, "It is well settled in the Fourth Circuit that these are the only statutory conditions precedent to suit that apply to the Commission," and citing cases).

Federal Rule of Civil Procedure 9(c) governs the pleading of conditions precedent. The Rule provides: "In pleading conditions precedent, it suffices to allege generally that all conditions precedent have occurred or been performed. But when denying that a condition precedent has occurred or been performed, a party must do so with particularity." Fed. R. Civ. P. 9(c). Thus while a plaintiff may satisfy Rule 9(c) by generally alleging that all conditions precedent have been fulfilled, a defendant seeking to contest compliance must identify with particularity the condition precedent it contends has not been satisfied. *See Route 22 Sports Bar, Inc.* 2021 WL 2557087, at *7 ("A party who intends to controvert the claimant's general allegation of performance or

14

occurrence thus is given the burden of identifying those conditions that the denying party believes are unfulfilled and wishes to put into issue." (quoting 5A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1304 (4th ed. 2008)).

Here, the EEOC has done precisely what Rule 9(c) requires. The First Amended Complaint alleges that "[a]ll conditions precedent to the institution of this lawsuit have been fulfilled." [ECF No. 13 ¶ 23]. That general averment is sufficient under the plain text of Rule 9(c).[2] *See Chesapeake Square Hotel, LLC v. Logan's Roadhouse, Inc.*, 995 F. Supp. 512, 516 (E.D. Va. 2014). The burden therefore shifts to the Mix/Concrete Defendants to deny with particularity any condition precedent they contend was not satisfied.

The Mix/Concrete Defendants argue that the EEOC failed to satisfy the statutory prerequisites to suit on the ground that Wright Concrete and Wright-Mix are separate entities from Wrightway and were not properly named during the administrative process. [ECF No. 42, at 5–6; ECF No. 44, at 6–7; ECF No. 59 at 2–3, 4–6]. I address each contention in turn.

      a.   Single Employer Test

Although the existence of a direct employment relationship ordinarily establishes employer status, the "ambiguity of the term employer in . . . civil rights statutes" like the ADA "has driven courts to fashion a variety of tests" for determining whether an entity "that does not directly employ the plaintiff may still be considered an employer under" the statute. *Hukill v. Auto Care, Inc.*, 192 F.3d 437, 442 (4th Cir. 1999), *abrogated on other grounds by Arbaugh v. Y & H Corp.*, 546 U.S. 500, 516 (2006)). One such approach is the "single employer" or "integrated employer" test, under

---

[2] As discussed below, even assuming Rule 9(c) requires more than a general averment that "all conditions precedent have been satisfied," I find that the EEOC has alleged sufficient facts to state a plausible claim for relief. *See Mayfield v. Nat'l Ass'n for Stock Car Auto Racing, Inc.*, 674 F.3d 369, 377 (4th Cir. 2012) (holding that allegations that may be stated generally under Rule 9(b) "must still be alleged in accordance with Rule 8."). The Mix/Concrete Defendants' motions to dismiss would therefore fail even under the more demanding pleading standard articulated in *Twombly* and *Iqbal*.

which courts assess whether two nominally separate entities are sufficiently interrelated to be treated as a single employer. *Id.* The Fourth Circuit has described the relevant inquiry through four nonexclusive factors: "(1) common management; (2) interrelation between operations; (3) centralized control of labor relations; and (4) degree of common ownership/financial control." *Id*. While the Fourth Circuit has declined to adopt that "mechanical test in every instance," it has noted that its "factors all point to the ultimate inquiry of . . . domination" by one entity over another entity. *Id.* at 442 n.7 (quoting *Johnson v. Flowers Indus.*, 814 F.2d 978, 981 n.\* (4th Cir. 1987)). The Fourth Circuit has not disavowed or rejected the integrated employer framework in labor and employment cases. *See id.*; *cf. Butler v. Drive Auto. Indus. of Am., Inc.*, 793 F.3d 404, 408 n.3 (4th Cir. 2015) (suggesting the ongoing viability of the "integrated employer" test in a Title VII case). Indeed, the circuit court has applied the four *Hukill* factors in at least one unpublished decision. *See Bittle-Lindsey v. Seegars Fence Co.*, 2022 WL 1566770, at \*2–\*3 (4th Cir. May 18, 2022) (unpublished).

The Mix/Concrete Defendants do not dispute that the EEOC satisfied all conditions precedent with respect to Wrightway. [ECF No. 42 at 3; ECF No. 44 at 1–3]. Instead, they contend that Wrightway, Wright Concrete, and Wright-Mix are legally distinct employers, such that the administrative proceedings directed toward Wrightway cannot satisfy the statutory conditions precedent as to the Mix/Concrete Defendants. *See* [ECF No. 30 ¶¶ 16, 19; ECF No. 31 ¶¶ 16, 19; ECF No. 59, at 3]. At this stage, however, that premise is inconsistent with the well-pleaded allegations of the First Amended Complaint and the documents properly considered under Rules 12(b)(6) and 12(c).

The First Amended Complaint alleges that Wrightway, Wright Concrete, and Wright-Mix constitute a single employer under the ADA. [ECF No. 13 ¶ 19]. It further alleges facts supporting

16

that conclusion, including, among other things, that Wrightway and Wright-Mix are affiliates or subsidiaries of Wright Concrete; that the entities publicly represent themselves as divisions of Wright Concrete and as the "Wright family of companies"; that they share common management, ownership, and financial control; that Wright Concrete promulgated the employment policies challenged in this action; that labor relations and human resources functions were centrally administered; and that Wright Concrete solicited employment applications on behalf of Wrightway and Wright-Mix. *Id.* ¶ 16. The EEOC further alleges that Ms. Tackett served as the human resources representative for all three Defendants, an allegation Wrightway and Wright Concrete expressly admit in their Answers. [ECF No. 13 ¶ 40; ECF No. 30 ¶ 40; ECF No. 31 ¶ 40]. They likewise admit that Ms. Tackett did not extend Mr. Moore an offer of employment. [ECF No. 30 ¶ 46; ECF No. 31 ¶ 46].

In addition, the EEOC alleges that all three Defendants maintained a facility and conducted operations at the same address: 1238 Holly Ridge Road, Delbarton, West Virginia 25670. [ECF No. 13 ¶ 29]. That address is identical to the one listed on the Amended Charge of Discrimination, [ECF No. 41-2], the Determination letter, [ECF No. 45-1, at 2], and the Notice of Failure of Conciliation, [ECF No. 43-3].

Copies of the Determination and Notice of Failure of Conciliation were also sent to Defendants' counsel of record in this case, Gregory Metzger, who represented Wrightway during the administrative proceedings. [ECF No. 45, at 13; ECF No. 45-1, at 5; ECF No. 43-3]. The Notice of Failure of Conciliation was further addressed to Ms. Tackett, the undisputed human resources representative for all Defendants. [ECF No. 30 ¶ 40; ECF No. 31 ¶ 40].

Finally, the EEOC's reasonable cause determination did not confine its findings to

17

Wrightway alone.[3] Rather, it expressly identified the three Defendants, together with related entities, as constituting a single "Respondent" and a covered "employer" within the meaning of the ADA. [ECF No. 45-1, at 2–3]. The Determination further stated that its findings were made "against all of the aforementioned business entities." *Id.* at 3.

Defendants counter that many of the allegations contained in the First Amended Complaint are nothing more than mere legal conclusions and are not entitled to the assumption of truth. *See* [ECF No. 59, at 3]. I do not agree. These factual allegations correspond directly to the factors identified by the Fourth Circuit in *Hukill*. Whether discovery ultimately substantiates those allegations is a question for another day. At the pleading stage, however, I must accept them as true and draw all reasonable inferences in the EEOC's favor. *Iqbal*, 556 U.S. at 678; *Twombly*, 550 U.S. at 570; *Conner*, 22 F.4th at 420. Doing so, I conclude that the EEOC has plausibly alleged that Wrightway, Wright Concrete, and Wright-Mix constitute a single employer under the ADA.

b.  Substantial Identity Exception

Alternatively, the Mix/Concrete Defendants argue that they must be dismissed because Mr. Moore failed to name them in his EEOC charge against Wrightway. [ECF No. 42, at 4; ECF No.

---

[3] The relevant portion of the EEOC's Determination letter provides:

> An examination of the evidence in this matter demonstrates the following facts:

> Respondent is a subsidiary of Wright Concrete & Construction, Inc. that conducts various business operations under its own name and through related business entities, including but not limited to operating ready-mix concrete plants in West Virginia and Kentucky. As a threshold matter, I find that Respondent Wright Concrete & Construction, Inc. and the following associated entities all constitute a single "employer" and "covered entity" within the meaning of the ADA: Wrightway Ready-Mix, Wright Mix Material, Wright Xpress, LLC, Pyro-Chem USA, Wright Underground, Wright Block and Precast, Ruby Wright Block and Brick, Wrightway Concrete Pumping, Wrightway Drilling and Exploration, Wrightway Rental & Supply, Wrightway Land. Respondent, Wright Concrete & Construction, Inc., and the aforementioned entities are hereinafter referred to collectively as "Respondent." The present Determination is made against all of the aforementioned business entities.

[ECF No. 45-1, at 2–3].

18

44, at 6–7]. I disagree.

Although a defendant ordinarily must be named in the underlying administrative charge before being sued in federal court, courts have long recognized a "substantial identity" exception to that general rule. *Alvarado v. Bd. of Trs. of Montgomery Cmty. Coll.*, 848 F.2d 457, 461 (4th Cir. 1988); *EEOC v. Am. Nat'l Bank*, 652 F.2d 1176, 1186 n.5 (4th Cir. 1981) ("Courts have developed exceptions to this rule, though, where it is clear that the defendant through some relationship with the named respondent had notice of the charges and participated in the conciliation process."); *see also Chastang v. Flynn & Emrich Co.*, 365 F. Supp. 957, 964 (D. Md. 1973) ("[W]here there is substantial, if not complete identity of parties before the EEOC and the court, it would require an unnecessarily technical and restrictive reading of [the statute]" to deny jurisdiction), *aff'd in relevant part*, 541 F.2d 1040 (4th Cir. 1976); *Evans v. Capitol Broad. Co.*, 716 F. Supp. 3d 387, 399 (W.D.N.C. 2024); *Keener v. Universal Cos.*, 128 F. Supp. 3d 902, 915–16 (M.D.N.C. 2015). Although the Fourth Circuit has addressed the "substantial identity" exception only in dicta, district courts within the Circuit have applied it. *See e.g.*, *EEOC v. 1618 Concepts, Inc.*, 432 F. Supp. 3d 595, 603–07 (M.D.N.C. 2020) (collecting cases); *see also Alvarado*, 848 F. 2d at 461 (citing two out-of-circuit decisions and seven district court decisions in the Fourth Circuit applying the exception but expressing "no opinion on the validity of the exception").

The substantial identity exception is distinct from the integrated employer doctrine discussed above. Whereas the integrated employer doctrine is a substantive inquiry directed to whether nominally separate entities constitute a single employer for purposes of liability, the substantial identity exception concerns whether the pre-suit administrative process is sufficient as to unnamed parties. *See 1618 Concepts, Inc.*, 432 F. Supp. 3d at 603–07; *Caudill v. N.C. Symphony*

19

*Soc'y, Inc.*, 750 F. Supp. 3d 531, 550–53 (E.D.N.C. 2024); *Evans*, 716 F. Supp. 3d at 399; *Butler v. Drive Auto. Indus. of Am.*, 793 F.3d 404, 408 n.3 (4th Cir. 2015). It asks whether an entity not named in the EEOC charge may nevertheless be sued because it had sufficient notice of and connection to the administrative proceedings such that requiring a separate charge would elevate form over substance. *Evans*, 716 F. Supp. 3d at 399; *Keener*, 128 F. Supp. 3d at 915 ("[C]ourts are sympathetic to the difficulties of mastering the organizational structure of an employer and naming all corporate entities that may have been involved in the discriminatory conduct." (citing *Alvarado*, 848 F.2d at 460)); *1618 Concepts, Inc.*, 432 F. Supp. 3d 595, 602–03; *see also Am. Nat'l Bank*, 652 F.2d at 1186 n.5.

The distinction reflects the purpose of the naming requirement itself. The requirement exists "(1) to notify the charged party of an alleged violation, and (2) to secure the charged party's compliance with the law." *1618 Concepts, Inc.*, 432 F. Supp. 3d at 603 (M.D.N.C. 2020) (citing *Alvarado*, 848 F.2d at 458–59); *see also Causey v. Balog*, 162 F.3d 795, 800–01 (4th Cir. 1998). When those objectives have been satisfied, courts have declined to treat the omission of a party's name from the administrative charge as an absolute bar to suit. *See e.g.*, *Alvarado*, 848 F.2d at 460–61 (allowing plaintiff to sue a college president in his official capacity, notwithstanding the fact he was not named in plaintiff's EEOC complaint); *Eggleston v. Chi. Journeymen Plumbers' Local Union No. 130, U.A.*, 657 F.2d 890, 905–07 (7th Cir. 1981) (reversing dismissal on grounds that unnamed party had adequate notice and opportunity to participate in conciliation).

Courts generally consider four factors in determining whether the exception applies: (1) whether the charging party, through reasonable effort, could have ascertained the unnamed party's role when the charge was filed; (2) whether the interests of the named and unnamed parties are so similar that inclusion of the unnamed party in the EEOC proceedings would have been unnecessary

20

for purposes of conciliation and voluntary compliance; (3) whether the unnamed party suffered actual prejudice from its absence from the administrative proceedings; and (4) whether the unnamed party represented to the charging party that dealings should occur through the named party. *Caudill*, 750 F. Supp. 3d at 552–53; *1618 Concepts*, 432 F. Supp. 3d at 604.

Application of those factors is necessarily fact intensive and ordinarily requires a developed evidentiary record. Accordingly, for that reason alone, dismissal at the pleading stage would be inappropriate. Nevertheless, accepting the allegations of the First Amended Complaint as true, I find that each factor weighs in favor of applying the exception.

First, the gravamen of the EEOC's claims is that Defendants unlawfully refused to hire Mr. Moore; the EEOC does not allege that he was ever employed by any Defendant. [ECF No. 13, at 1–2; ECF No. 45, at 18]. It also alleges that Defendants publicly hold themselves out as "the Wright family of companies," that Wright Concrete centrally controls labor relations and solicits employment applications on behalf of Wrightway and Wright-Mix, and that the entities operate as a single employer. [ECF No. 13 ¶¶ 16, 19]. Given Mr. Moore's alleged limited contact with Defendants during the hiring process, it is reasonable to infer from these allegations that an outside applicant like Mr. Moore could not have readily discerned the Mix/Concrete Defendants' precise corporate role when filing his charge.

Second, the EEOC has plausibly alleged that the Mix/Concrete Defendants' interests were substantially identical to those of Wrightway throughout the administrative proceedings. Again, the First Amended Complaint alleges common ownership, common management, centralized control of labor relations, common human resources personnel, common ADA policies and practices, common financial control, common office space, and describes Wrightway and Wright-Mix as divisions of Wright Concrete. *Id.* ¶ 16. Those allegations permit a reasonable inference that

21

the entities shared substantially identical interests during the EEOC proceedings. *See 1618 Concepts*, 432 F. Supp. 3d at 605.

Third, the record does not support a finding of actual prejudice at this stage. As noted above, the EEOC's reasonable cause determination expressly identified Wright Concrete, Wrightway, Wright-Mix, and related entities as a single "Respondent" and a covered "employer" under the ADA and stated that the determination was made "against all of the aforementioned business entities." [ECF No. 45-1, at 2–3]. The Determination further advised that an EEOC representative would contact Respondent to begin conciliation. *Id.* The First Amended Complaint likewise alleges that the EEOC engaged in conciliation with all three Defendants. [ECF No. 13 ¶¶ 19, 21].

The EEOC's allegations are further reinforced by the Notice of Failure of Conciliation, which was sent to the common business address identified in the First Amended Complaint. [ECF No. 13 ¶ 29; ECF No. 43-3]. The Notice was also directed to Ms. Tackett–whom Wrightway and Wright Concrete admit served as the human resources representative for all Defendants—and to Gregory Metzger, who represented Wrightway during the administrative proceedings and now represents all three Defendants in this action. [ECF No. 13 ¶¶ 16, 19; ECF No. 30 ¶ 40; ECF No. 31 ¶ 40; ECF No. 43-3]. On this record, and accepting the EEOC's allegations as true, I cannot conclude that the Mix/Concrete Defendants lacked notice of the administrative proceedings or suffered actual prejudice from their omission from the original charge. *See 1618 Concepts, Inc.*, 432 F. Supp. 3d at 605. It is plausible that the Mix/Concrete Defendants had notice from the outset of the EEOC's investigation.

Finally, the fourth factor also favors the EEOC. The Mix/Concrete Defendants contend that Wrightway alone communicated with the EEOC during conciliation. [ECF No. 42, at 3, 6; ECF

22

No. 44, at 2–3, 6–7; ECF No. 59, at 2, 6]. If true, it is reasonable to infer that Wrightway and shared counsel acted on behalf of the related entities, rather than that the remaining Defendants were excluded from the administrative process. That inference is consistent with the EEOC's allegations that the Determination identified all three entities as Respondents, that all three were invited to participate in conciliation, and that Wrightway was the only entity to respond to the EEOC. [ECF No. 13 ¶ 19–22; ECF No. 53, at 19–20] Courts have found similar allegations sufficient to satisfy the fourth factor. *See e.g.*, *1618 Concepts*, 432 F. Supp. 3d at 605.

The Mix/Concrete Defendants' related challenge to the adequacy of the EEOC's conciliation efforts is similarly unavailing. As the Supreme Court explained in *Mach Mining, LLC v. EEOC*, 575 U.S. 480, 494 (2015), judicial review of the EEOC's conciliation efforts is narrow: the EEOC satisfies its obligation by informing the employer of the specific findings and by attempting to engage the employer in a discussion aimed at remedying the identified violations. The EEOC is not required to issue a conciliation-failure letter or adhere to any particular form of notice as a condition of suit. *Id.* at 483–84. Moreover, the applicable statute expressly prohibits the EEOC from publicly disclosing matters "said or done" during conciliation without "written consent of the persons concerned." 42 U.S.C. § 2000e-5(b)(1). This necessarily limits the detail available at the pleading stage regarding conciliation efforts.

Here, the First Amended Complaint alleges that the EEOC issued a reasonable cause determination encompassing all three Defendants, invited Respondent to conciliation, engaged in conciliation efforts, and was unable to secure an acceptable agreement. Those allegations are sufficient at this stage. Any dispute regarding the sufficiency or good faith of the EEOC's efforts, including any evidentiary showing by agency personnel or competing proof offered by Defendants, is properly addressed on a developed summary judgment record. *Mach Mining, LLC*, 575 U.S. at

494 (recognizing that an EEOC affidavit generally suffices to show compliance with the conciliation requirement, but where an employer presents credible evidence that the EEOC failed to provide information or attempt conciliation, the court must resolve that limited factual dispute).

Accordingly, the EEOC has plausibly alleged facts supporting application of the substantial identity exception. At a minimum, the applicability of the exception presents factual issues that cannot be resolved on the pleadings. The Mix/Concrete Defendants' motions to dismiss are therefore **DENIED**, and Defendants' Motion to Stay Discovery are **DENIED as MOOT**.[4]

## IV.   CONCLUSION

For the foregoing reasons, the Motions to Dismiss First Amended Complaint, [**ECF Nos. 41, 43**], are **DENIED**; Plaintiff's Motion to Strike, [**ECF No. 57**], is **GRANTED**; Defendants' Motions to Stay Discovery, [**ECF Nos. 46, 48, 50**], are **DENIED as MOOT**; and Defendants' Motion to Strike, [**ECF No. 60**], is **DENIED**.

The court **DIRECTS** the Clerk to send a copy of this Memorandum Opinion and Order to counsel of record and any unrepresented party.

The court further **DIRECTS** the Clerk to post a copy of this published opinion on the court's website, www.wvsd.uscourts.gov.

ENTER:        June 25, 2026

JOSEPH R. GOODWIN
UNITED STATES DISTRICT JUDGE

---

[4] I emphasize that my rulings at this stage are limited to the sufficiency of the pleadings under the applicable Rule 12 standards and the arguments raised in the pending motions. I express no view on the ultimate merits of the EEOC's claims, which remain to be adjudicated on a developed factual record. I further note that, at this stage of the proceedings, Defendants do not challenge whether Mr. Moore constitutes a qualified individual under the statute or otherwise contest any additional substantive requirements under the ADA.

24